**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MARY SOPCIC, | Case No. 13-26875 (ERW) |
| Debtor. | Hearing Date: April 9, 2014 at 9:30 a.m. |

## COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION

| | |
|---|---|
| Name of Applicant: | Neal, Gerber & Eisenberg LLP |
| Authorized to Provide Professional Services to: | Debtor and Debtor-in-Possession |
| Date of Retention: | July 1, 2013 |
| Period for which compensation and reimbursement is sought: | July 1, 2013 through March 10, 2014 |
| Interim amount of fees sought as actual, reasonable and necessary | N/A |
| Interim amount of expenses sought as actual, reasonable and necessary | N/A |
| Total amount of fees sought as actual, reasonable and necessary | $291,448 |
| Total amount of expenses sought as actual, reasonable and necessary | $2,128 |

This is a(n):     ____ interim     ☑ final application

If this is not the first application filed, disclose the following for each prior application:

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| **Date Filed** | **Period Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| N/A | N/A | N/A | N/A | N/A | N/A |

The aggregate amount of fees and expenses <u>paid</u> to the Applicant to date for services rendered and expenses incurred herein is: $0; Applicant holds $18,576 of pre-petition retainer and $275,000 of retainer paid to Applicant pursuant to Paragraph 4 of the Confirmation Order entered March 6, 2014. Total retainer held equals $293.576, which is the amount sought by this Application.

Date: March 19, 2014                By: */s/ Thomas C. Wolford*
                                                    Applicant, for Neal, Gerber & Eisenberg LLP

NGEDOCS: 2157860.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>MARY SOPCIC,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-26875 (ERW) |

## SUMMARY SHEET

Fees Previously Requested:  N/A
Fees Previously Paid:  N/A

Expenses Previously Requested:  N/A
Expenses Previously Paid:  N/A

NAME OF APPLICANT:
Neal, Gerber & Eisenberg LLP
ROLE IN THE CASE:
Counsel to the Debtor and Debtor-in-Possession
CURRENT APPLICATION
 Fees Requested: $291,448
 Expenses Requested: $2,128

| NAMES OF PROFESSIONALS/ PARAPROFESSIONALS | YEAR ADMITTED TO PRACTICE | HOURS BILLED CURRENT APPLICATION | RATE | TOTAL FOR APPLICATION |
|---|---|---|---|---|
| **PARTNERS** | | | | |
| Andrea M. Despotes | 1995 | 1.30 | $675.00 | $877.50 |
| Nicholas M. Miller | 1998 | 0.80 | $495.00 | $396.00 |
| Thomas C. Wolford | 1986 | 320.60 | $490.00 | $157,094.00 |
| Lawrence M. Benjamin | 1987 | 313.30 | $480.00 | $150,384.00 |
| | | | | |
| **ASSOCIATE** | | | | |
| Kevin G. Schneider | 2010 | 5.20 | $295.00 | $1,534.00 |
| | | | | |
| **PARAPROFESSIONALS** | | | | |
| Mirjana Mirkovic | N/A | 106.00 | $210.00 | $22,260.00 |
| Diana J. Koppang | N/A | 0.20 | $190.00 | $38.00 |
| R. Scott Johnson | N/A | 1.50 | $125.00 | $187.50 |
| Matthew Baker | N/A | 3.80 | $112.00 | $426.00 |
| | | | | |
| TOTAL | | **752.70** | | **$333,197** |

TOTAL BLENDED HOURLY RATE: $443
(Including Paraprofessionals and written off time)

NGEDOCS: 2157860.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>MARY SOPCIC,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-26875 (ERW)<br><br>Hearing Date: April 9, 2014 at 9:30 a.m. |

**FIRST AND FINAL FEE APPLICATION OF NEAL, GERBER & EISENBERG LLP
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL
TO THE DEBTOR FOR THE PERIOD FROM
JULY 1, 2013 THROUGH AND INCLUDING MARCH 10, 2014**

Neal, Gerber & Eisenberg LLP, an Illinois limited liability partnership ("**NGE**" or the "**Applicant**"), counsel to the above-captioned reorganized debtor (collectively, the "**Debtor**"), pursuant to Sections 330 and 331 of the United States Bankruptcy Code, Bankruptcy Rule 2016 and Rule 5082-1 of the Bankruptcy Rules for the United States District Court and the United States Bankruptcy Court For the Northern District of Illinois (the "**Local Rules**"), submits this First and Final Fee Application (the "**Application**") for the period from July 1, 2013 through March 10, 2014 (the "**Application Period**").  The Applicant has received payments of $293,576, of which $18,576 was an advance payment retainer received pre-petition from sources other than the Debtor and $275,000 was received as a security retainer pursuant to the terms of the Debtor's Plan and Paragraph 4 of this Court's confirmation order entered on March 6, 2014.  The Applicant seeks Court approval to allow and apply those payments as follows: $291,448 for professional services rendered and $2,128 for expenses incurred.  Applicant's actual fees are substantially in excess of the foregoing amounts – the fees for professional services (without including costs) through March 10, 2014 are $333,197.  But the

NGEDOCS: 2157867.3

Applicant has agreed to waive the additional fees if this Application is granted.[1] In support of the foregoing requests, Applicant states as follows:

## I. BACKGROUND

1. On July 1, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**").

2. In addition to her residence, the Debtor's primary assets as of the Petition Date consisted of her direct and indirect interests in nine (9) parcels of income-producing real estate, each of which was encumbered by one or more mortgages.

3. On February 12, 2014, the Debtor filed her Disclosure Statement for the Debtor's First Amended Plan of Reorganization Dated February 10, 2014 [Docket No. 164] (the "**Disclosure Statement**").

4. On March 4, 2014, the Debtor filed her First Amended Plan of Reorganization Dated February 10, 2014, as Modified March 4, 2014 [Docket No. 214] (as amended, the "**Plan**").

5. On March 6, 2014, the court entered its Order Approving Disclosure Statement for Debtor's Plan of Reorganization Dated February 10, 2014 and confirming Debtor's Plan of Reorganization Dated February 10, 2014, as Modified March 4, 2014 [Docket No. 227] (the "**Confirmation Order**").

---

[1] In addition, Applicant has spent additional time after March 10th which will likely exceed $10,000, including the closing of three separate property dispositions pursuant to the terms of the confirmed Plan of Reorganization, as well as further preparation of this fee application. If this fee petition is granted in full, Debtor's counsel will also not seek additional compensation for the time from March 10, 2014 through March 20, 2014, which will be the Plan's Effective Date (assuming the confirmation order is not appealed or modified).

6. Pursuant to Section 1.15 of the Plan, the occurrence of the Effective Date will occur on the date on which the Confirmation Order confirming the Plan becomes a Final Order.

7. This Court has jurisdiction over the Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory bases for the relief requested herein are Sections 105(a), 330 and 331 of the Bankruptcy Code.

## II.  NGE'S RETENTION

9. On July 3, 2013, the Debtor applied to the Court for an Order Under Sections 327(a) and 330(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing Employment and Retention of Neal, Gerber & Eisenberg LLP as Attorneys for the Debtor [Docket No. 14] (the "**Retention Application**") to perform legal services that are generally necessary to enable the Debtor to faithfully execute their duties as debtor-in-possession.

10. On July 15, 2013, NGE filed its Disclosure of Compensation of Attorney for Debtor [Docket No. 27] (the "**Disclosure of Compensation**")[2].

11. On July 24, 2013, this Court entered that certain Order Authorizing the Employment and Retention of Neal, Gerber & Eisenberg LLP as Attorneys for the Debtor Pursuant to Sections 327(a) and 330(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), [Docket No. 41] (the "**Retention Order**").

---

[2] The Disclosure of Compensation noted an $18,576 unused advance payment retainer as of July 1, 2013.

### III. SERVICES RENDERED BY NGE DURING THE CASE PERIOD

12. During the Application Period, NGE assisted the Debtor in confirming her Plan as quickly as possible, which the Debtor was able to do approximately eight months after the Petition Date.

13. At the start of the case, the Debtor faced substantial deficiency claims from at least five (5) secured creditors, which precluded her from reaching a settlement with any of them unless the Debtor had agreements with all of them. The Debtor was confident that if she was afforded time and breathing space to reorganize, all of her creditors and her estate would benefit. Among other things, the bankruptcy proceedings allowed the Debtor to market her interests in an orderly fashion and determine where the true value could be realized. Although at the outset of the case, it appeared that the sale of the Bosworth property would be the key to reorganization, as it turned out, another property was sold – the Eastwood property – and the Debtor's share of the proceeds from that sale was essential to the implementation of her plan. Of her interests in the nine (9) properties, the Debtor was able to retain (6) six of them – and she would have likely been able to retain the Glenview property as well but for the fact that during the bankruptcy proceedings the Debtor decided to retire from her bakery (which was a tenant at the Glenview property), due in part to her age, and that bakery produced the income that would have been necessary to retain the Glenview property.

14. The surrender of the Kenmore properties was a difficult decision for the Debtor, in part because of the family's long history with those properties, and one that she was not willing to agree to without exploring every possible avenue to keep them. Applicant analyzed countless scenarios under which the Debtor might have retained her interest in the properties secured by MSK's loans, some of which would have been pursued had not MSK ultimately

agreed to settlement that was acceptable to the Debtor which provided for the Debtor's retention of substantial cash collateral and deferred the disposition of the properties until after confirmation in 2014 (which was tax beneficial). Those scenarios included a possible sale of the Kenmore properties to a third party, and the Applicant had fully negotiated two separate purchase and sale agreements before the decision was ultimately made not to sell them, and instead transfer them pursuant to deed-in-lieu agreements.

15. NGE's work included long and at times difficult negotiations with more than five separate secured lenders including: (a) MSK North Kenmore, LLC, (b) MSK North Kenmore 1, LLC, (c) Northbrook Bank and Trust Company, (d) RF Glenview, LLC, and (e) Oxford Bank. Before a deal was reached with MSK North Kenmore, LLC and MSK North Kenmore 1, LLC (collectively "MSK"), three separate evidentiary hearings were conducted (i.e., a turnover hearing, and two cash collateral hearings) and Applicant was required to prepare for other evidentiary hearings which were resolved right before the scheduled commencement of trial.

## IV. NATURE OF LEGAL SERVICES PERFORMED BY NGE[3]

16. NGE has served as counsel to the Debtor at all times during this case and NGE attorneys have devoted substantial time to numerous legal matters. All services and costs for which compensation is requested by NGE in this Application were reasonable and necessary and were performed for and on behalf of the Debtor, and not for or on behalf of any other person.

17. All NGE professionals kept a contemporaneous record of the time spent rendering such services and, consistent with guidelines of the Office of the United States Trustee, separated tasks in billing increments of one-tenth of an hour. All of the services performed by NGE have

---

[3] A chart showing a summary of fees incurred and value of the services performed by each professional and the position of each professional (partner, associate, or paraprofessional) for each category during the Application Period is attached hereto as Exhibit A.

been legal in nature and necessary for the proper administration of the chapter 11 case. Detailed time entries for each NGE professional related to services performed during the Application Period are attached hereto as <u>Exhibit B</u>.

18. Most of NGE's time during the Application Period was devoted to the following matters: approximately 42% to the Plan and Disclosure Statement (B320); approximately 18% to Case Administration (B110); approximately 14% for Relief from Stay/ Adequate Protection Proceedings (B140); approximately 6% to Asset Disposition (B130); and approximately 4% to Restructurings (B420).

19. As a result of its efforts during the Application Period, NGE now seeks approval to apply retainers of $293,576 in payment of fees calculated at the applicable approved hourly billing rates of the NGE professionals who have worked on the chapter 11 case and $2,128 in charges and disbursements actually and necessarily incurred by NGE while providing service to the Debtor during the Application Period. This Final Application reflects a voluntary deduction in NGE's requested fees and disbursements by an amount in excess of $40,000.

20. Set forth below are descriptions of the principal activities in which NGE professionals rendered professional services in excess of $10,000.

    **A. <u>Case Administration – B110</u>**:
    (Total Hours: 142.50, Total Fees: $60,987.00)

21. During this Application Period, NGE professionals reviewed correspondence, financial data and all pleadings filed in these cases; coordinated the filing of all of the Debtor's pleadings and monthly reports; responded to creditor inquiries; and conferred with the U.S. Trustee regarding the status of the case and various court filings. NGE attorneys also corresponded and conferred with counsel to MSK, Oxford, Northbrook and RF Glenview

regarding, among other things, pleadings and hearings, business operations, creditor issues, strategy and various other aspects of this case related to the ultimate goal of Plan confirmation.

22. In connection with the foregoing, NGE attorneys expended 142.50 hours for which NGE seeks compensation of $60,987.00 (before applying the discount as discussed above) An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| Name | Hours | Value |
|---|---|---|
| Lawrence M. Benjamin | 23.50 | $11,280.00 |
| Thomas C. Wolford | 89.10 | $43,731.00 |
| Mirjana Mirkovic | 26.70 | $5,607.00 |
| Matthew Baker | 2.20 | $244.00 |
| R. Scott Johnson | 1.00 | $125.00 |
| **Total** | **142.50** | **$60,987.00** |

**B. Asset Analysis and Recovery – B120**:
(Total Hours: 24.50, Total Fees: $10,869.50)

23. During this Interim Application Period, NGE attorneys assisted the Debtor in a number of matters, including: (a) identifying and analyzing assets that could be sold or otherwise used to fund the Debtor's plan; (b) obtaining possession of the Kenmore properties and use of the rents therefrom; and (c) obtaining contributions from the other partners in 6006 N. Kenmore.

24. In connection with the foregoing, NGE attorneys expended 24.50 hours for which NGE seeks compensation of $10,869.50 (before applying the discount as discussed above). An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| Name | Hours | Value |
|---|---|---|
| Lawrence M. Benjamin | 19.30 | $9,264.00 |
| Thomas C. Wolford | 2.00 | $980.00 |

| Name | Hours | Value |
|---|---|---|
| Mirjana Mirkovic | 2.50 | $525.00 |
| R. Scott Johnson | 0.50 | $62.50 |
| Diana J. Koppang | 0.20 | $38.00 |
| **Total** | **24.50** | **$10,869.50** |

    **C. Asset Disposition – B130**:
    (Total Hours: 44.10, Total Fees: $21,168.00)

25.    During this Application Period, NGE attorneys assisted the Debtor in attempting to sell the Kenmore properties, including the retention of the broker, and the negotiation of purchase and sale agreements. NGE also negotiated forbearance on the foreclosure of the Madison Western property, which included written stipulations and agreements with Oxford counsel. NGE also assisted the Debtor in analyzing and proposing plans to keep or dispose of the Glenview property. Finally, after plan confirmation, Applicant worked on the closing of the deed-in-lieu transactions for the both the Glenview property and the Kenmore properties.

26.    In connection with the foregoing, NGE attorneys expended 44.10 hours for which NGE seeks compensation of $21,168.00 (before applying the discount as discussed above). An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| Name | Hours | Value |
|---|---|---|
| Lawrence M. Benjamin | 44.10 | $21,168.00 |
| **Total** | **44.10** | **$21,168.00** |

    **D. Relief from Stay/Adequate Protection Proceedings – B140**:
    (Total Hours: 97.90, Total Fees: $46,824.00)

27.    During this Application Period, NGE attorneys prepared for and went to trial on two separate motions with respect to Debtor's use of cash collateral for the Kenmore properties, and was prepared to litigate the a lift stay hearing as well, but it settled on the Courthouse steps. In addition, the Applicant negotiated cash collateral orders with RF Glenview.

28.     In connection with the foregoing, NGE attorneys expended 97.90 hours for which NGE seeks compensation of $46,824.00 (before applying the discount as discussed above). An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| **Name** | **Hours** | **Value** |
|---|---|---|
| Lawrence M. Benjamin | 72.70 | $34,896.00 |
| Thomas C. Wolford | 23.70 | $11,613.00 |
| Mirjana Mirkovic | 1.50 | $315.00 |
| **Total** | **97.90** | **$46,824.00** |

**E.  Meetings of and Communications with Creditors – B150**:
(Total Hours: 24.80, Total Fees: $11,904.00)

29.     During this Interim Application Period, NGE attorneys had extensive communications with Debtor's creditors, including the main five secured lenders: (a) MSK North Kenmore, LLC, (b) MSK North Kenmore 1, LLC, (c) Northbrook Bank and Trust Company, (d) RF Glenview, LLC, and (e) Northbrook Bank & Trust Company..

30.     In connection with the foregoing, NGE attorneys expended 24.80 hours for which NGE seeks compensation of $11,904.00 (before applying the discount as discussed above). An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| **Name** | **Hours** | **Value** |
|---|---|---|
| Lawrence M. Benjamin | 24.80 | $11,904.00 |
| **Total** | **24.80** | **$11,904.00** |

**F.  Claims Administration and Objections – B310**:
(Total Hours: 32.00, Total Fees: $10,490.00)

31.     During this Interim Application Period, NGE attorneys reviewed and analyzed proofs of claims; prepared objections to claims; analyzed the composition of the classes; conferred with creditors regarding claims and ballots.

32.  In connection with the foregoing, NGE attorneys expended 32.00 hours for which NGE seeks compensation of $10,490.00 (before applying the discount as discussed above). An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| Name | Hours | Value |
|---|---|---|
| Lawrence M. Benjamin | 2.80 | $1,344.00 |
| Thomas C. Wolford | 10.90 | $5,341.00 |
| Mirjana Mirkovic | 17.90 | $3,759.00 |
| Matthew Baker | 0.40 | $46.00 |
| **Total** | **32.00** | **$10,490.00** |

**G.  Plan and Disclosure Statement (inc. Business Plan) – B320**:
(Total Hours: 317.90, Total Fees: $140,937.00)

33.  During this Application Period, NGE attorneys assisted in the formulation negotiating and confirmation of the Debtor's plan of reorganization. The Applicant was required to spend numerous hours drafting the plan (which ultimately contained 17 classes of claims and interests) and disclosure statement, and revising both documents several times to accommodate the many competing interests and reflect numerous changes as the underlying settlements were completed. In addition, because the Debtor did not retain a financial advisor, NGE attorneys assisted the Debtor and her sons extensively with respect to the liquidation analysis required to be included with the Disclosure Statement.

34.  In connection with the foregoing, NGE attorneys expended 317.90 hours for which NGE seeks compensation of $140,937.00 (before applying the discount as discussed above). An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B. A general breakdown is shown below.

| Name | Hours | Value |
|---|---|---|
| Lawrence M. Benjamin | 76.20 | $36,432.00 |

|  |  |  |
|---|---:|---:|
| Thomas C. Wolford | 190.10 | $93,149.00 |
| Nicholas M. Miller | 0.80 | $396.00 |
| Kevin G. Schneider | 4.80 | $1,416.00 |
| Mirjana Mirkovic | 44.80 | $9,408.00 |
| Matthew Baker | <u>1.20</u> | <u>$136.00</u> |
| **Total** | **317.90** | **$140,937.00** |

**H. <u>Restructurings – B420</u>**:
(Total Hours: 27.70, Total Fees: $13,368.00)

35.     During this Application Period, NGE attorneys drafted term sheets, proposals and various interations of settlement agreements with Northbrook; it negotiated and drafted interim agreements and a loan modification with Oxford Bank; and it attempted to formulate a proposal to keep the Glenview property.

36.     In connection with the foregoing, NGE attorneys expended 27.70 hours for which NGE seeks compensation of $13,368.00 (before applying the discount as discussed above).   .  An itemized breakdown of the services rendered to the Debtor is attached hereto as Exhibit B.  A general breakdown is shown below.

| <u>Name</u> | <u>Hours</u> | <u>Value</u> |
|---|---:|---:|
| Lawrence M. Benjamin | <u>27.70</u> | <u>$13,368.00</u> |
| **Total** | **27.70** | **$13,368.00** |

**I. <u>Statement of Expenses</u>:**
(NGE Total Expenses: $2,128.00)

37.     NGE has also incurred or accrued expenses of $2,128.00 for, among other things, reproduction of documents, filing fees, and postage.  A general breakdown is shown below.  These were reasonable and necessary expenses in connection with its representation of the Debtor.  Applicant incurred other fees, such as electronic research, for which it is not seeking reimbursement.

**EXPENSE SUMMARY**

| Expense Category | Total Expenses |
|---|---:|
| Reproduction of Documents | $419.00 |
| Filing Fees | $1,259 |
| Witness Fee | $56.00 |
| Outside Copy Vendor | $70.00 |
| Postage | $324.00 |
| **Total** | **$2,128.00** |

## V.  APPLICABLE LEGAL STANDARDS AND CRITERIA

38. Section 330 of the Bankruptcy Code provides, in relevant part:

> (a)(1) After notice . . . the court may award to . . . a professional person employed under section 327 or 1103—
>
> (A)  reasonable compensation for actual, necessary services rendered by . . . such person; and
>
> (B)  reimbursement for actual, necessary expenses.
>
> 11 U.S.C. § 330(a)(1).

39. Pursuant to section 330, professionals applying for fees must demonstrate that their services were actual, necessary and reasonable. Bankruptcy Rule 2016, in turn, requires that

> [a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.
>
> *  *  *
>
> . . . services performed by attorneys representing Debtor must produce a benefit to the estate in order to be fully compensable from the estate.

In re Grabill Corp., 110 B.R. 356, 358-59 (Bankr. N.D. Ill. 1990) (Squires, J.) (citations omitted).

In assessing the reasonableness of attorneys' fees under section 330, Judge John H. Squires of the Bankruptcy Court for the Northern District of Illinois considered the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In re McNichols, 258 B.R. 892, 904-05 (Bankr. N.D. Ill. 2001) (Squires, J.).

40. Regardless of the significance of certain individual factors in determining the value of professional services, the Court should primarily focus its attention upon the reasonableness of the services provided to the estate. As the United States Court of Appeals for the First Circuit has recognized:

> [I]t is important for a court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the debtor] would not have enjoyed the success it did had its counsel managed matters differently.

In re Boston and Maine Corporation, 776 F.2d 2, 10 (1st Cir. 1985) (quotations and citations omitted). The Seventh Circuit has recognized that the appropriate measure to determine the reasonableness of attorneys' fees is the market based approach. See Steinlauf v. Continental Illinois Corp. (In the Matter of Continental Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992) (stating that the "object in awarding a reasonable attorneys' fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arms' length

negotiation . . ."). Similarly, as one Court has reasoned, "the attorney/client relationship [i]s one in which the terms of the engagement should normally be upheld, including the fee arrangement, so as not to unduly intrude upon the bargain struck between the parties who have entered into an important professional relationship." In re Famisaran, 224 B.R. 886, 898 (Bankr. N.D. Ill. 1998) (Squires, J.).

### VI.   APPLICATION OF RELEVANT CRITERIA AND STANDARDS TO THIS COMPENSATION REQUEST

41.   In applying the criteria set forth above to this request for compensation, the Court should consider foremost the effort required and expended by NGE, the reasonableness of the services rendered and the extremely good results achieved. All of the services performed by NGE were required for the proper representation of the Debtor in this case were authorized by the Court and were performed by NGE at the request and direction of the Debtor. Pursuant to Section 331 of the Bankruptcy Code and the generally applicable criteria of the time, nature, extent and value of the services performed, all of NGE's services are compensable.

42.   The amount of services rendered by NGE to achieve the results obtained for the benefit of the estate's creditors was reasonable in light of the volume and complexity of the issues involved in this case. NGE attorneys allocated responsibilities among attorneys at NGE to minimize possible duplication of efforts. Compensation is sought for participation in one task by more than one attorney of NGE only in instances where joint participation was necessary because of the significant impact of a particular hearing or meeting, the complexity of the problems involved, the magnitude of the work to be performed, and the specialization required or the need to preserve a continuity of representation. In similar situations, such representation has been approved. See, e.g., Berberana v. Coler, 753 F.2d 629, 631 (7th Cir. 1985). For example, on certain occasions, more than one NGE attorney attended meetings in this case when numerous

matters were to be discussed, it would have been difficult for one attorney to participate in a meaningful manner in all discussions.

43. The experience and expertise in bankruptcy cases and the quality of the services brought to this case by NGE further supports the requested compensation. This law firm has charged the estate the normal and customary hourly rates for similar services rendered in like circumstances to other clients. Furthermore, the rates at which NGE seeks compensation are its standard hourly rates. The rates are comparable to the rates charged by other practitioners of similar experience, competence and standing in the community.

44. NGE submits that its hourly rates and hours for which compensation is sought are reasonable and appropriate. The compensation request is well within an acceptable range for comparable legal services in the Chicago metropolitan legal community and is eminently fair given the efforts required of NGE in this case, and the risk of non-payment.

### VII. STATEMENT OF LEGAL SERVICES AND EXPENSES PURSUANT TO 11 U.S.C. § 504 AND RULE 2016(B) OF THE RULES OF BANKRUPTCY PROCEDURE

45. No agreement exists between NGE and any third party for the sharing of compensation received by NGE in this case, except as allowed by the exception set forth in section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation among members of NGE.

46. During the Application Period, NGE has devoted 752.70 hours to represent the Debtor with respect to the categories listed in Exhibit A, and has provided the Debtor with actual and necessary legal services worth a total of at least $333,197 and has incurred expenses totaling in excess of $2,128.

47. A chart showing a summary of fees incurred and value of the services performed by each professional and the position of each professional (partner, associate, or paraprofessional) for each category during the Application Period is attached hereto as <u>Exhibit A</u>

48. A copy of the computer generated time entries reflecting the time recorded for these services, organized in project billing categories in accordance with Local Rule 5082-1, is attached hereto as <u>Exhibit B</u>.

49. Attached hereto as <u>Exhibit C</u>, is the Affidavit of Lawrence M. Benjamin attesting to, among other things, the accuracy of the information set forth in Exhibits A and B.

**WHEREFORE,** Neal, Gerber & Eisenberg LLP, counsel for the Debtor herein, respectfully requests that this Court enter an Order authorizing and approving:

A. Final compensation in the amount of $291,448 incurred for actual, necessary and valuable professional services rendered to the Debtor from July 1, 2013 through and including through March 10, 2014;

B. Final reimbursement of expenses totaling $2,128 incurred in connection with NGE's representation of the Debtor from July 1, 2013 through and including through March 10, 2014;

C. Authorizing NGE to apply the retainers towards the foregoing amounts of fees and expenses; and

D. Granting such other and further consistent relief as the Court may deem equitable and just.

Dated: March 19, 2014                            Respectfully Submitted,

                                                      **NEAL, GERBER & EISENBERG LLP**

                                                        By: */s/ Thomas C. Wolford*
                                                            Lawrence M. Benjamin (ARDC #6196417)
                                                            Thomas C. Wolford (ARDC #06194526)
                                                            NEAL, GERBER & EISENBERG LLP
                                                            Two North LaSalle Street, Suite 1700
                                                            Chicago, IL 60602-3801
                                                            Telephone: (312) 269-8000
                                                            Facsimile: (312) 269-1747

                                                 *Attorneys for Reorganized Debtor*

# CERTIFICATE OF SERVICE

Thomas C. Wolford, an attorney, certifies that on March 19, 2014, he caused the foregoing *First and Final Fee Application of Neal, Gerber & Eisenberg LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtor for the Period from July 1, 2013 through and including March 10, 2014* (the "**Application**") to be filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to the following parties:

Lawrence M. Benjamin
lbenjamin@ngelaw.com

Patrick S. Layng
USTPRegion11.ES.ECF@usdoj.gov

Matthew Johns
mjohns@thompsoncoburn.com

Thomas M. Lombardo
tlombardo@ginsbergjacobs.com

Julia Jensen Smolka
jjensen@dimonteandlizak.com

Kenneth W. Bach
kennethb@johnsonblumberg.com

Abraham Brustein
abrustein@dimonteandlizak.com

Kenneth W. Bach
kennethb@johnsonblumberg.com

Phillip W. Nelson
pnelson@edwardswildman.com

Thomas C. Wolford
twolford@ngelaw.com

Devon J. Eggert
deggert@freeborn.com

Todd Rowden
trowden@thompsoncoburn.com

Keara Roethke
kroethke@ginsbergjacobs.com

Francis X. Buckley, Jr.
fxbuckleyjr@thompsoncoburn.com

Steven R. Rappin
dolswang@hrolaw.com

Mark E. Leipold
mleipold@gouldratner.com

Joel A. Stein
joelastein@dlec.com

By: */s/ Thomas C. Wolford*
    Lawrence M. Benjamin (ARDC #6196417)
    Thomas C. Wolford (ARDC #06194526)
    NEAL, GERBER & EISENBERG LLP
    Two North LaSalle Street, Suite 1700
    Chicago, IL 60602-3801
    Telephone: (312) 269-8000
    Facsimile: (312) 269-1747